**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| -v.- | ) | Case No.: 1:07-CR-0334 (RMU) |
| | ) | |
| KAREN EMORY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT KAREN EMORY'S MOTION TO SUPPRESS ALLEGED STATEMENTS

Pursuant to Fed. R. Crim. P. 12(b)(3)(C), defendant Karen Emory respectfully moves this Court to suppress evidence of statements allegedly made during the course of an interrogation at the Criminal Investigations Division of the United States Capitol Police. Ms. Emory was not properly advised of her constitutional rights under *Miranda v. Arizona*, 383 U.S. 436 (1966). The grounds for this motion are more fully set forth in the accompanying memorandum of law.

Respectfully submitted,

/s/ Ronald C. Machen_____
Ronald C. Machen, DC Bar 447889
Wilmer Cutler Pickering Hale and
Dorr LLP
Attorney for Defendant
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone (202) 663-6000
Fax (202) 663 6363

February 14, 2008

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| -v.- | ) | Case No.: 1:07-CR-0334 (RMU) |
| | ) | |
| KAREN EMORY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT KAREN EMORY'S MEMORANDUM
IN SUPPORT OF MOTION TO SUPPRESS ALLEGED STATEMENTS**

Defendant Karen Emory moves to suppress any statements allegedly made during the course of an interrogation conducted by the Criminal Investigations Division of the United States Capitol Police. Ms. Emory was not advised of her constitutional rights at any point during her interrogation, as was required under *Miranda v. Arizona*, 384 U.S. 436 (1966). Consequently, all of Ms. Emory's statements made during the course of that interrogation must be suppressed.

**STATEMENT OF FACTS**

Karen Emory is a U.S. Capitol Police Officer, Private First Class, in the Senate Division of the U.S. Capitol Police. On the morning of November 13, 2007, while she was engaged in her regular duties, Ms. Emory was contacted by her superior officer, a Sergeant of the U.S. Capitol Police. This Sergeant instructed Ms. Emory to contact a Sergeant with the Criminal Investigations Division of the U.S. Capitol Police ("CID"), and to meet with CID investigators regarding recent fires in congressional office buildings. This first Sergeant did not advise Ms. Emory that she was the target of an investigation; nor did he advise Ms. Emory of her constitutional rights under *Miranda*, although notice was required (as recognized by §§ 30.06 and 30.11 of the Collective Bargaining Agreement for the U.S. Capitol Police, Exhibit A).

1

Ms. Emory was maintaining a security post for another officer at the time. However, she immediately contacted the CID Sergeant as directed. The CID Sergeant instructed Ms. Emory to meet with CID investigators as soon the other officer returned to her post. The CID Sergeant's instructions, like the first Sergeant's instructions, were not optional. The CID Sergeant did not advise Ms. Emory of her *Miranda* rights.

When the other officer returned to her post, Ms. Emory immediately reported to the CID Sergeant, as ordered. The CID Sergeant told Ms. Emory to relinquish her service weapon. Ms. Emory complied. The CID Sergeant secured the weapon in a locker and led Ms. Emory to another office, where two detectives and an Assistant Inspector General were waiting. The CID Sergeant departed without issuing any further instructions, warnings, or qualifications.

Ms. Emory was then alone in the room with the two detectives and the Assistant Inspector General (collectively, "investigators"). The investigators never advised Ms. Emory that she was free to leave the room (which was closed) and never notified her about her rights under *Miranda*. Instead they proceeded to question Ms. Emory for over an hour without any breaks. The investigators controlled the questioning, and eventually accused Ms. Emory of setting the fires. Ms. Emory demanded a lawyer and a union representative, but the detective continued the questioning, asking why Ms. Emory set the fires. In fact, when Ms. Emory asked to call her father-in-law (who is an attorney), one of the detectives refused to honor that request "unless he is your lawyer." Ms. Emory then asked whether she was under arrest. Ms. Emory was told she was not under arrest, but as soon as she began to leave, one of the investigators sought to find a senior U.S. Capitol Police Officer for the purpose of ordering Ms. Emory to stay. One of the investigators then told Ms. Emory that she was being put on administrative notice and instructed her to wait for "an official."

## <u>ARGUMENT</u>

Before a person in custody is questioned by police, she must first be advised of her constitutional rights, including the right to remain silent and the right to counsel. *Miranda*, 384 U.S. at 444. The rule applies whether or not the person has been formally arrested; she is entitled to *Miranda* warnings whenever she has been "deprived of [her] freedom of action in any significant way." *Id.* Statements obtained in violation of *Miranda* are inadmissible in the government's case in chief in any resulting criminal prosecution. *Id.*

When an interrogation is challenged under this framework, the reviewing court must first determine the totality of the "circumstances surrounding the interrogation," and must then inquire whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The "ultimate inquiry" is whether the interrogated person was subjected to "restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983); *see also United States v. Peterson*, 506 F. Supp. 2d 21, 23 (D.D.C. 2007).[1] An actual arrest is not required.

The test is objective. It "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994); *see also United States v. Gatson*, 357 F.3d 77, 82 (D.C. Cir. 2004) ("'Custody' is determined objectively: would a reasonable person have understood his situation comparable to a formal arrest?"); *Peterson* 506

---

[1] While "[i]nterrogation … must reflect a measure of compulsion above and beyond that inherent custody itself" (*Rhode Island v. Innis*, 446 U.S. 293, 300 (1998)), the alleged statements in this case were in response to "express questioning," *id*. at 300-301, and therefore meet that prong of the test.

F. Supp. 2d at 31. The most relevant factors generally include "(1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning." *United States v. Willaman*, 437 F.3d 354, 359-360 (3d Cir. 2006). *See also*, *United States v. Martin*, 369 F.3d 1046, 1057 (8th Cir. 2004).

These factors and indeed the totality of the circumstances of Ms. Emory's interrogation demonstrate she was not "at liberty to terminate the interrogation and leave." *Thompson*, 516 U.S. at 112. First, and most importantly, Ms. Emory's attendance was compelled by orders from her superior officers, Sergeants of the U.S. Capitol Police. *Cf. United States v. Shafer*, 384 F. Supp. 486 (N.D. Ohio 1974) (National Guardsmen ordered by their superior officers to provide statements), and *State v. Davis*, 582 S.E.2d 289 (N.C. Ct. App. 2003) (Marine questioned by superior officer). Second, as soon as Ms. Emory arrived, the CID Sergeant secured her service weapon, an unusual step that would have increased the pressures on any reasonable person. Third, Ms. Emory was never advised she was free to leave—an important indicator of custody, *see Willaman*, 437 F.3d at 359; *Martin*, 369 F.3d at 1057. Finally, even after detectives told Ms. Emory she was not under arrest, investigators sought to restrict her freedom of movement, presumably to induce further statements. For example, after Ms. Emory invoked her right to counsel, investigators continued questioning Ms. Emory, would not permit Ms. Emory to call her father-in-law, and directed Ms. Emory to stay in the room (to wait for "an official"). Indeed, one investigator sought an order directing Ms. Emory to stay and even followed Ms. Emory to her supervisor—presumably intending that the supervisor would order further questioning.

Beyond these factors, other circumstances of the interrogation demonstrate it was custodial within the meaning of *Miranda*.  The interrogation was held at a time and place set by Ms. Emory's superior officers; the investigators outnumbered Ms. Emory three-to-one; the interrogation was conducted in a closed room for an hour, without breaks; and by their manner and questions investigators attempted to keep Ms. Emory off-balance and easier to control. These factors would compel any reasonable person to believe her freedom had been restricted.

The decision in *United States v. Romaszko* is instructive.  253 F.3d 757 (2d Cir. 2001). The interrogation in that case was custodial in light of circumstances including that Ms. Romaszko was "directed by her boss to attend the interview," that she "was never told that she was free to leave," and because "a reasonable person in [her] shoes would not have felt free to leave the meeting unless they wanted to suffer the economic sanction of losing their job." *Id*. at 759.  In light of these factors, the magistrate (whose decision was adopted by the district court and affirmed by the Second Circuit) found that the interview was "custodial from its inception." *Id*. at 761.[2]

Moreover, in this case Ms. Emory was not merely an employee "window clerk," *id*. at 759.  Ms. Emory was an officer (Private First Class) in the U.S. Capitol Police, and she was operating under the compulsion of instructions from her superior officers.  Officers of the U.S. Capitol Police are expected to follow the orders of their superior officers.  The significance of this added pressure is recognized by the U.S. Capitol Police Collective Bargaining Agreement, which entitles officers to notice that they are under investigation (Ex. A at § 30.06) and requires

---

[2] The magistrate also found that during the meeting the defendant "asked to leave or attempted to stand up and was told that she could not" and "at one point … the lead investigator told Romaszko, "No, you're not going anywhere" *Romaszko*, 253 F.3d at 759.  But those factors were not present at the "inception" of the interview.  *Id*.

*Miranda* warnings "[i]f a police officer … is likely to be placed under arrest as a result of the interrogation" without regard to other circumstances that might determine custody for civilians, Ex. A at § 30.11.

The interrogation of Ms. Emory is thus analogous to the interrogations in *Shafer* (384 F. Supp. 486) and *Davis* (582 S.E.2d 289). The statements in those cases were obtained from members of the military, all of whom were—like Ms. Emory—acting at the instructions of their superior officers. *Shafer*, 384 F. Supp. 486; *Davis*, 582 S.E.2d 289. The *Shafer* and *Davis* courts found the force of those instructions sufficient to render any questioning custodial under *Miranda*. The result is the same here.[3]

### Conclusion

In light of the totality of the circumstances, and for the foregoing reasons, "a reasonable person" in Ms. Emory's place would "have felt he or she was not at liberty to terminate the interrogation and leave," *Thompson*, 516 U.S. at 112, and the interrogation was custodial within the meaning of *Miranda*. Defendant Karen Emory respectfully submits that any statements made during the course of that interrogation must therefore be suppressed.

---

[3] Significantly, the interrogation in this case is quite unlike the non-custodial interrogation in *United States v. Baird*, 851 F.2d 376 (D.C. Cir. 1988). The interview in *Baird* was—right from the beginning—explicitly non-custodial. The defendant was told at the outset that "the interview was going to be voluntary" and that he "was free to go whenever he wanted to." *Id.* at 378. Moreover, the *Baird* interview was conducted by an investigator from the U.S. Department of Transportation Office of Inspector General, a civilian outside the chain of command. Here, the interrogation was conducted by detectives from the U.S. Capitol Police Criminal Investigations Division with the full authority of Ms. Emory's superior officers, thereby implicating Ms. Emory's obligation to follow orders or else risk her job if she did not comply. The entire analysis in *Baird* turns on these dispositive facts. *See id.* at 380-382.

Respectfully submitted,


/s/ Ronald C. Machen_____
Ronald C. Machen, DC Bar 447889
Wilmer Cutler Pickering Hale and
Dorr LLP
Attorney for Defendant
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone (202) 663-6000
February 14, 2008                          Fax (202) 663 6363

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 14th day of February, 2008, a copy of the foregoing

DEFENDANT KAREN EMORY'S MOTION TO SUPPRESS ALLEGED STATEMENTS was

filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service

of the filing to all counsel of record in this case who have obtained CM/ECF passwords.


<u>    /s/ Demian S. Ahn    </u>

**US. V. EMORY, CASE NO. 1:07-CR-0334 (RMU)**

**<u>DEFENDANT'S EXHIBIT A</u>**



# COLLECTIVE BARGAINING AGREEMENT

Between the

# FOP/U.S. Capitol Police Labor Committee

And the

# United States Capitol Police

## Effective January 9, 2003

## ARTICLE 30
### RIGHTS OF OFFICERS UNDER INVESTIGATION

*Section 30.01*      *Purpose*

To ensure the integrity and reputation of the USCP and its bargaining unit employees, the Department and the Union agree that the Department has the responsibility and exclusive right to investigate complaints of misconduct against its employees from all sources, internal and external.

*Section 30.02*      *Commencement of Investigation*

1.    All bargaining unit employees employed by the Department will have the following rights and privileges:

    a.    When an allegation is leveled against a bargaining unit employee, or when the Department commences an investigation, the Chief of Police, or designee, will take one of the following actions in reference to the pay status of the accused employee:

        (1)    Continue the bargaining unit employee on duty in the employee's regular assignment; or

        (2)    Place the employee on administrative leave with pay; or

        (3)    Continue the employee on duty in some other assignment consistent with the nature of the allegation; or

        (4)    Place the employee on emergency suspension, in accordance with applicable Department directives.

    b.    In the event that a bargaining unit employee is placed on emergency suspension, the employee will be afforded an opportunity to meet with the Bureau Commander, or in the absence of the Bureau Commander the Watch Commander, no later than the start of the next business day.  The employee will be placed on administrative leave with pay until the conclusion of the meeting.

2.    The Department will investigate complaints of misconduct as expeditiously as possible. Investigations of Category II complaints of misconduct will be completed within sixty (60) calendar days of initiation and Category I complaints of misconduct will be completed within one hundred twenty (120) calendar days, at which time a disposition

---

represented, the Department, at the bargaining unit employee's request, will stop the meeting and provide a reasonable opportunity to both obtain representation and confer confidentially before proceeding with the meeting, as stated in Section 30.03, Subsection 1 of this Article.

In non-criminal matters, the bargaining unit employee will be required to answer questions only after the officer has been informed that the questions asked will narrowly, specifically and directly pertain to his performance of official duties or continued fitness as a police officer. The employee will also be told that the failure to truthfully and fully answer the questions asked could result in disciplinary action. Any answers given under these circumstances are involuntary and may not be used against an employee in a subsequent criminal proceeding. If there are criminal overtones, and an appropriate authority issues a written declination of criminal prosecution, the Department will provide the employee with a copy at the interview.

## Section 30.04    *Reasonable Hour*

Questioning will be conducted at a reasonable hour, preferably at a time when the officer is on duty, unless the seriousness of the investigation is of such a degree that immediate action is required. When possible, the interrogation will take place at the offices of the Department.

## Section 30.05    *Officer-In-Charge*

The bargaining unit employee will be informed of the name, rank, and assignment of the management representative conducting the questioning at the commencement of the questioning and all persons present during the interrogation. All questions directed to the officer under interrogation will be asked by one investigator at a time.

## Section 30.06    *Nature of Investigation*

Bargaining unit employees will be informed of allegations placed against them and/or of their rights and responsibilities at an appropriate time prior to questioning. The Department will allow bargaining unit employees to review citizen complaints at the time of questioning, and upon request, be provided with a copy of the complaint, although certain identifying information regarding complainant(s) and/or witness(es) may/will redacted.

## Section 30.07    *Periods for Interrogation*

Interrogating sessions will be for reasonable periods and will be timed to allow for such personal necessities and rest periods as are reasonably necessary.

### Section 30.08        Language

The police officer under interrogation will not be subjected to abusive or threatening language.

### Section 30.09        *Recordings and Release of Information*

1.      The Department retains the right to determine when and by what means an interrogation or interview will be recorded.  In recording a formal interrogation of a bargaining unit officer, the entire interrogation, including all questions, statements and the noting of recess periods, will be recorded.

2.      After completion of an investigation, including interviews of all witnesses, a respondent officer, or his or her designated Union representative, will, upon written request, be provided with a copy of the respondent officer's written and/or recorded statement, regardless of whether or not charges are filed.

3.      The discovery and release of information related to an investigation will be governed by Article 31, Section 31.07 of this Agreement and applicable Department directives.

4.      While procedural errors may be pursued as a violation of this Agreement, they will not be construed to negate an otherwise proper disciplinary action.

### Section 30.10        *Union Participation*

Union representatives who attend investigatory questioning sessions may discuss the subject of the questioning with the bargaining unit employee being questioned.  Beyond this, Union representatives who attend investigatory questioning sessions will be bound by the same confidentiality restrictions as the person being questioned, provided that the Union representative and the bargaining unit employee being questioned may consult with an attorney retained on behalf of the bargaining unit employee.

Union representatives may ask questions reasonably related to the matter being investigated, or which may help the bargaining unit employee to relate his side of the story.  Union representatives may not answer for the bargaining unit employee, stop the questioning, or prevent the Department from carrying out its investigation.

Union representatives must not be the subject of or otherwise involved in the matter under investigation.

### Section 30.11        *Notification of Rights*

If the police officer under interrogation is under arrest, or is likely to be placed under arrest as

a result of the interrogation, he will be informed of his Miranda rights prior to the commencement of the interrogation. Whenever practical, the subject officer will be removed to a private location before being arrested, informed of his/her Miranda rights and commencement of the interrogation.

### Section 30.12    Confidential Communications

1.    Employees serving as Union representatives:

    a.    have the same rights and obligations under applicable law, the Collective Bargaining Agreement (CBA) and the Department directives as other covered employees when they are questioned about work-related matters;

    b.    may, while serving in a representational capacity, obtain information from other bargaining unit employees for the purpose of providing informed advice and effective representation;

    c.    do not have to disclose information they obtain from other bargaining unit employees while acting in a representational capacity, unless, consistent with subsection 3 this Article, the confidentiality of a particular conversation is waived by the employee involved or unless disclosure is required by law, rule, regulation or other appropriate authority.

2.    Consistent with their rights and obligations as employees, Union representatives will account for their work-related conduct and performance when questioned by management about such matters. This includes the right to request Union representation when questioned in connection with a conduct investigation and the obligation to answer questions fully and truthfully, in accordance with 5 USC 7114(b)(4), Sections 05.02 and 30.03 of the CBA and Operational Directive PRF 1.3, Rules of Conduct.

3.    The Department will not require employees serving as Union representatives to disclose information provided to them by another bargaining unit employee while they were serving in a representational capacity, or any advice they may have provided to that employee, unless the confidentiality of any such representational conversation has been waived by the employee involved or unless disclosure is required by law, rule, regulation, or other appropriate authority.

### Section 30.13    Unrelated Allegations

For those instances when the bargaining unit employee has been arrested for an offense unrelated to the performance of his duties for an incident which occurred outside of their

normal duty hours, the Department will not attempt to solicit any statement from the employee pending the resolution of the criminal charges. The employee may waive this requirement at their election. However, the Department may implement any of the procedures referred to in Section 30.02 of this Article, or Article 31.

### Section 30.14    *Complaints*

Supervisors who receive citizen complaints will make a reasonable effort to identify the complainant and urge the complainant to reduce their complaint to writing. When a complaint is received by telephone, the supervisor will document the complaint, in writing, by preparing a CP-536, Complaint Report.

### Section 30.15    *Disposition of Complaints*

Notification to the bargaining unit employee concerning the disposition of complaints will be defined in one of the following classifications:

1. Sustained
2. Not Sustained
3. Unfounded
4. Exonerated

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| -v.- ) | Case No.: 1:07-CR-0334 (RMU) |
| ) | |
| KAREN EMORY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## <u>ORDER</u>

This matter is before the Court on Defendant Karen Emory's Motion To Suppress

Alleged Statements.  Having duly considered the Motion, the Opposition thereto, and the parties'

other submissions, it is this _____ day of _____, 2008,

**ORDERED** that defendant's Defendant Karen Emory's Motion To Suppress Alleged

Statements is **GRANTED;**

It is further **ORDERED** that any statements allegedly made by the defendant during her

an interrogation at the Criminal Investigations Division of the United States Capitol Police are

hereby **SUPPRESSED**.


Date:_____    _____

Hon. Ricardo M. Urbina

United States District Court

1