IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| -v.-   ) | Case No.: 1:07-CR-0334 (RMU) |
| ) | |
| KAREN EMORY,   ) | |
| ) | |
| Defendant.   ) | |
| _____) | |

**DEFENDANT KAREN EMORY'S MOTION TO**
**SUPPRESS IDENTIFICATION EVIDENCE OR TESTIMONY**

Pursuant to Fed. R. Crim. P. 12(b)(3)(C), defendant Karen Emory respectfully moves this Court to suppress any evidence of an identification of Ms. Emory allegedly made by a witness to the U.S. Capitol Police, as well as any subsequent identification (including any in-court identification) by that same witness, because admission of that evidence would violate the Due Process Clause of the Fifth Amendment.  In the alternative, defendant respectfully requests a hearing to determine whether admission of the aforesaid identification evidence would violate due process standards.  The grounds for this motion are more fully set forth in the accompanying memorandum of law.

|  | Respectfully submitted, |
|---|---|
| | |
| | /s/ Ronald C. Machen_____ |
| | Ronald C. Machen, DC Bar 447889 |
| | Wilmer Cutler Pickering Hale and Dorr LLP |
| | Attorney for Defendant |
| | 1875 Pennsylvania Avenue, NW |
| | Washington, DC 20006 |
| | Telephone (202) 663-6000 |
| February 14, 2008 | Fax (202) 663 6363 |

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>-v.- )<br>)<br>KAREN EMORY, )<br>)<br>Defendant. )<br>_____ ) | Case No.: 1:07-CR-0334 (RMU) |

**DEFENDANT KAREN EMORY'S MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS IDENTIFICATION EVIDENCE OR TESTIMONY**

Defendant Karen Emory moves to suppress any evidence of an identification of Ms. Emory allegedly made by a witness to the U.S. Capitol Police, as well as any subsequent identification by that same witness. The original identification was obtained by inherently suggestive procedures whereby the witness was directed to Ms. Emory, and it is unreliable under the standards established by *Neil v. Biggers*, 409 U.S. 188 (1972). Finally, in light of the suggestive procedures underlying the original identification, any subsequent identification (including any in-court identification) would be inevitably tainted and therefore inadmissible.

**STATEMENT OF FACTS**

Defendant Karen Emory has been indicted for allegedly setting a fire in a restroom at the Dirksen Senate Office Building at approximately 7:53 A.M. on November 2, 2007. It appears that the government may offer evidence that an unidentified witness allegedly observed Ms. Emory in the vicinity of that restroom at about 7:56 A.M. As stated in the government's Report of Investigation dated November 3, 2007 ("November 3 Report"):

> At approximately 0900 hours, [Special Agent] advised this
> investigator that a staff member identified as [redacted] …
> reported that he left his office [redacted] at approximately 0756 to

1

> go to the Senate Chef Eatery. [Redacted] reported that as he walked down the corridor towards the elevators, he observed a Capitol Police Officer coming out of the ladies rest room at the end of the hallway. [Redacted] described the officer as an African American female, approximately 5'1'', 160 lbs, with short black hair that was gelled with waves. [Redacted] reported that as he approached the rest room, the officer stopped outside the ladies room and looked around, then proceeded down the hallway out of [redacted] sight. [Redacted] stated the way the officer stopped and looked at him is what caught his attention.

According to this report, when the witness returned at approximately 8:01 A.M., he smelled smoke and observed two officers responding to the restroom.

The witness's description generally fits several U.S. Capitol Police Officers, including some for whom Ms. Emory has been mistaken. However, the description does not match Ms. Emory in three respects. First, Ms. Emory weighs (and weighed on November 2, 2007) considerably more than the weight estimated by the witness. Second, Ms. Emory does not (and did not) use hair gel. Third, Ms. Emory's hair is not (and was not) "wavy."

Notwithstanding these discrepancies, at approximately 11:00 A.M. a Special Agent from the U.S. Capitol Police Criminal Investigations Division concluded that Ms. Emory fit the description. Thereafter, the agent and a U.S. Capitol Police Sergeant contacted the witness. While a verbatim transcript is not available, the government's Report of Investigation dated November 2, 2007 ("November 2 Report"), states that the agent directed the witness to walk by Ms. Emory's post and "report if he recognizes anyone." Then, "[a]pproximately one minute later," the witness "confirmed" that the officer at SH-211 (apparently Ms. Emory) was "the same one he observed walking out of the ladies restroom near SD 201."[1]

---

[1] The November 3 Report appears to describe the same events, although it omits the Agent's apparent role directing the witness to Ms. Emory. It states only that the witness "had gone by the area of SH-211 and reported to [the agent] that the same female officer he observed exiting the

2

Nearly three weeks after the alleged identification, investigators showed the putative witness a surveillance video. The video purportedly showed the witness "leaving his office, walking towards the end of the corridor and disappearing out of camera's view as [he] went to the left in the area of the restrooms." The witness, upon viewing the video, reportedly stated that "he observed a female, African American, Capitol Police Officer exit the ladies restroom." The witness viewing the video did not offer any additional description of the individual he observed.

The video putatively referenced in the above report appears to have been recorded from a distant camera. The video shows the putative witness walking down a hallway, away from the camera. It is impossible to discern any of this first person's identifying characteristics—the video shows only a light-colored shirt and dark-colored pants. The video then shows a second person crossing the end of the hallway from left to right. However, the video does not show any of the second person's identifying characteristics. While it does show generally dark clothing, it does not show the gender, height, weight, hair, face or anything else about the person. Moreover, the second person would have been visible to the first for only three seconds; the video does not show whether the putative witness was even looking at the second person; and it is impossible to determine whether the putative witness could have even seen the second person's face.

## ARGUMENT

I. **THE GOVERNMENT'S IDENTIFICATION EVIDENCE WAS OBTAINED BY INHERENTLY SUGGESTIVE PROCEDURES AND IS NOT SUFFICIENTLY RELIABLE FOR ADMISSION IN A CRIMINAL CASE**

The above identification evidence is inadmissible under the due process standards recognized in *Stovall v. Denno*, 388 U.S. 293, 302 (1967), *Neil v. Biggers*, 409 U.S. 188 (1972),

---

rest room was at SH-211." While the two reports describe the facts differently, neither indicates a second witness identification. Thus, it appears they describe the same identification.

and *Manson v. Braithwaite*, 432 U.S. 98 (1977). The witness—whose identification was based on a fleeting glance of innocuous conduct—was essentially pointed in Ms. Emory's direction and asked to confirm whether he "recognized anyone." The witness followed those instructions and thus "confirmed" the investigators' conclusions, even though Ms. Emory did not perfectly fit the original description. This sort of predetermined identification is manifestly unreliable and, under the Due Process Clause of the Fifth Amendment, cannot be admitted against Ms. Emory.

### A. The Due Process Test For Identification Evidence

The admissibility of identification evidence under the Due Process Clause is governed by a well-established test. First the court must determine whether the identification was obtained by "impermissibly suggestive" procedures. *United States v. Rattler*, 475 F.3d 408, 411 (D.C. Cir. 2007) (citing *United States v. Washington*, 12 F.3d 1128, 1134 (D.C. Cir. 1994) and *Neil v. Biggers*, 409 U.S. 188, 197(1972)); *see also Manson*, 432 U.S. 98. If so, the court must determine "whether, under the totality of the circumstances, the identification was sufficiently reliable to preclude 'a very substantial likelihood of irreparable misidentification.'" *Rattler*, 475 F.3d at 411. The courts make that "central" determination with reference to five primary factors cited in *Biggers*: the opportunity of the witness to view the suspect at the time of the crime; the witness's degree of attention at the time of the crime; the accuracy of the original description; the level of certainty the witness demonstrates at the time of the confrontation; and the time between the crime and the confrontation. 409 U.S. at 197; *Manson*, 432 U.S. at 116 (citing *Biggers*); *see also Rattler*, 475 F.3d at 411 (citing *Manson* 432 U.S. at 116).

### B. The Identification Procedure Was Impermissibly Suggestive

"The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall*, 388 U.S. at 302; *see also*, *Manson*, 432 U.S. at 116 ("single-photograph displays may be viewed in general with suspicion"); *United*

4

*States v. Singleton*, 702 F.2d 1159, 1165-1166 (D.C. Cir. 1983) (recognizing that "on-the-scene showup identifications" are "inherently suggestive"). Indeed, guidelines recently issued by the Department of Justice emphasize "the inherent suggestiveness of identifications in which only one individual is shown." *United States v. Rattler*, 475 F.3d 408, 411 (D.C. Cir. 2007).

The identification procedure in this case illustrates the reasons for that skepticism. The investigators had already concluded Ms. Emory was their suspect. They directed the witness towards Ms. Emory's post. By pointing the witness in Ms. Emory's direction with the revealing instruction to confirm whether he "recognize[d] anyone," investigators effectively communicated that the "right" person was at Ms. Emory's post. Moreover, without a verbatim transcript or hearing, it is impossible to know what investigators did say—their instructions may well have been more explicitly suggestive than stated in the November 2 Report (much as that report is more explicit than the November 3 Report, which omits reference to the agent's instructions).

Finally, while some otherwise impermissible procedures may be justified by practical necessity (*e.g.*, *Stovall v. Denno*, 388 U.S. 293 (victim in hospital with injuries)), there was no such necessity here. Ms. Emory could have been directed to appear for a lineup at any time, much as she was directed to attend the interview that is the subject of our second motion. Moreover, because she was an employee, photographs of Ms. Emory were presumably available (at the very least, from her personnel file). Thus, a multiple-person photographic array could have been constructed with relative ease. There was no reason for investigators to employ a single-person procedure that would inherently suggest Ms. Emory was the "right" answer.

  **C. The Identification Does Not Bear Indicia Of Reliability Sufficient To Outweigh The Corrupting Effect Of The Identification Procedure**

The alleged identification in this case bears none of the indicia of reliability necessary to outweigh "the corrupting effect of the suggestive identification," *Rattler*, 475 F.3d at 411

(emphasis omitted), as none of the *Biggers* factors substantively support the identification.  The first factor—the witness's "opportunity to view" the suspect at the time of the initial incident (*Rattler*, 475 F.3d at 411)—weighs against admissibility.  The witness viewed the suspect only briefly; according to the video, the witness had a *maximum* of three seconds.  The witness viewed the suspect from a distance; about twelve paces away (perhaps thirty feet).  Finally, the witness never engaged the suspect face-to-face (unlike, for example, a teller in a bank robbery, *Rattler*, 475 F.3d at 414).

The second factor is the "witness' degree of attention."  *Id*. at 411.  This too weighs against admissibility.  There is no indication the witness was paying close attention at the time of the incident.  The witness was not focused on the suspect, or engaged face-to-face, as is often the case in robberies or assaults (*id*. at 414).  Indeed, the witness had no reason to focus on the suspect—the woman he saw was not engaged in criminal activity at all.  The November 3 Report states that the witness simply noticed the woman because she "stopped and looked at him."

The third factor is the accuracy of the original description.  *Rattler*, 475 F.3d at 411.  Here, the description was general, and it generally fit several U.S. Capitol Police Officers.  Moreover, the height and weight description does not fit Ms. Emory.  But even if that inexactitude were immaterial, the description of the suspect's hair does not fit.  Ms. Emory does not use gel and her hair is not "wavy."  Thus, the original description is vague—and where it is specific, it does not match Ms. Emory.

The fourth and fifth factors—the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation (*Rattler*, 475 F.3d at 411)—are inconclusive.  While the confrontation took place the same day as the initial incident, there is no evidence one way or the other whether the witness was certain about the identification.  However, under the

circumstances—after a brief and unremarkable encounter at a distance, with a woman he did not know, and based on a description that is at least partially a mismatch—it seems unlikely the witness would have any probative degree of certainty, particularly in view of the procedures that led to the identification in the first place.

.      Thus, even if the time of the confrontation weighs in favor of the identification, it does not outweigh "the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 116. The witness was not paying close attention to the suspect when he did see her; he saw her briefly, from a distance, and from the side; his original description did not completely fit Ms. Emory; and there is no indication that the witness himself was certain of the identification. The mere fact that the confrontation was relatively prompt cannot outweigh these substantive factors that directly undermine the merits of the identification itself.

The government may present the video of the hallway as evidence supporting the identification, perhaps arguing it independently shows Ms. Emory even before the witness enters the corridor. But the issue in this motion is *not* what this ambiguous video might show—the question is whether this witness would have identified Ms. Emory without the impermissibly suggestive procedures employed by investigators at the time. The government cannot be permitted to bolster its uncertain video evidence with an impermissibly suggestive identification.

## **CONCLUSION**

The identification evidence in this case was unnecessarily obtained through inherently suggestive procedures, and the identification itself lacks any guarantees of reliability that might outweigh the corrupting influence of the impermissibly suggestive procedures. For those reasons, and in light of the totality of the circumstances, admission of the original identification (or any subsequent identification by the same witness) would violate the Due Process Clause of

the Fifth Amendment. Defendant respectfully submits that the evidence must therefore be suppressed.

                                      Respectfully submitted,

                                      /s/ Ronald C. Machen
                                      Ronald C. Machen, DC Bar 447889
                                      Wilmer Cutler Pickering Hale and Dorr LLP
                                      Attorney for Defendant
                                      1875 Pennsylvania Avenue, NW
                                      Washington, DC 20006
                                      Telephone (202) 663-6000
February 14, 2008                    Fax (202) 663 6363

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on this 14th day of February, 2008, a copy of the foregoing DEFENDANT KAREN EMORY'S MOTION TO SUPPRESS IDENTIFICATION EVIDENCE OR TESTIMONY was filed electronically with the Clerk of the Court. The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

                                                               __/s/ Demian S. Ahn__

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
|                             ) | |
|     -v.-                        ) | Case No.: 1:07-CR-0334 (RMU) |
|                             ) | |
| KAREN EMORY,                ) | |
|                             ) | |
|     Defendant.                  ) | |
| _____) | |

### **ORDER**

This matter is before the Court on Defendant Karen Emory's Motion To Suppress Identification Evidence Or Testimony. Having duly considered the Motion, the Opposition thereto, and the parties' other submissions, it is this _____ day of _____, 2008,

**ORDERED** that defendant's Defendant Karen Emory's Motion To Suppress Identification Evidence Or Testimony is **GRANTED;**

It is further **ORDERED** that any evidence of the alleged identification of Ms. Emory described in the Defendant's Motion is hereby **SUPPRESSED**.


Date:_____          _____

                                                                                     Hon. Ricardo M. Urbina

                                                                                    United States District Court